CHARLES J. COE, Appellee, *vs.* WILLIAM A. MOON, Appellant.

*Opinion filed October 28, 1913.*

1. INFANTS—*ratification of contract made during minority is a question of intention.* In order to constitute a ratification of a contract made during minority the act relied upon as a ratification must be performed with full knowledge of its consequences and with express intent of ratifying what is known to be voidable.

2. SAME—*when alleged ratification is ineffectual.* Where the same lack of knowledge exists at the time of an alleged ratification of a contract made during minority as existed at the time the contract was made, the alleged ratification is held to be a part of the original transaction and is ineffectual.

3. SAME—*when infant should be required to quit-claim his interest.* Where a deed made by a minor in exchange for a deed to a certain farm is set aside in equity at his instance, the decree should require him to quit-claim his interest in the farm to such person as the court directs.

4. SAME—*other party need not be placed in statu quo when infant's deed is disaffirmed—allowance for improvements.* To give effect to an infant's disaffirmance of his contract it is not necessary that the other party shall be placed *in statu quo;* but the purchaser from an infant whose deed has been avoided is entitled

to be allowed for the improvements placed by him upon the land, by setting off the same against the rents and profits.

5. SAME—*when correctness of accounting, as to infant, cannot be inquired into.* Where the deed of an infant is set aside by a court of equity at his instance and no cross-errors are assigned on appeal by the other party from the decree, the correctness of the accounting provision of the decree, in so far as the infant is concerned, cannot be inquired into.

APPEAL from the Circuit Court of Woodford 'county; the Hon. T. M. HARRIS, Judge, presiding.

ARTHUR H. SHAY, for appellant.

LLOYD PAINTER, and ED. E. ROBESON, for appellee.

Mr. JUSTICE CARTER delivered the opinion of the court:

This was a bill filed in the circuit court of Woodford county to set aside a deed to a house and lot in Eureka, in said county, given by appellee, Charles J. Coe, while still a minor, to Edward Beutke, through whom appellant claims title to said premises. The case was referred to a master in chancery, who recommended that the deed be set aside and that appellee pay to appellant a certain amount for repairs, less certain rents appellant had received. The court overruled exceptions to the master's report and entered a decree in accordance therewith. This appeal followed.

Appellee's twenty-first birthday was January 15, 1908. Shortly before that date he was living with his mother, a widow, on a farm in Livingston county, near Streator. His cousin, John Barickman, at that time a 'young man about twenty-six years of age, was in the real estate business at Streator. In the early part of January, 1908, Barickman was talking with appellee and his mother about disposing of the house and lot in Eureka, which then stood in the mother's name. It was considerably run down and in need of repairs. Barickman suggested that he could arrange a trade whereby Mrs. Coe could exchange her house and lot

for a quarter section of land in Kearney county, Kansas, owned by Beutke, and that the farm land could then be disposed of easier than the house and lot. In order to enable appellee to make the trade if the Kansas land proved satisfactory to him, Mrs. Coe conveyed the Eureka property to her son, appellee herein, the consideration specified being one dollar and love and affection. Beutke at that time was living in Oklahoma but had formerly lived in or near Streator and was known to both appellant and appellee. On the evening of January 7, 1908, Barickman and appellee boarded an Atchison, Topeka and Santa Fe train at Streator for Lakin, the nearest railroad station to the land in question. . On the same day William A. Moon conveyed the Kansas land to Beutke upon the request of Barickman without any money being paid in making the transfer, the deed being mailed to Beutke at his home in Blackwell, Oklahoma. Appellee did not know until several months afterward that Moon had owned the Kansas land. On the train Barickman told Coe that he expected to receive a dispatch from Beutke at Kansas City saying whether or not he would make the trade. On their arrival in Kansas City Barickman received a telegram from Beutke saying that he would exchange the properties. Barickman then suggested that instead of continuing their trip to see the land they go to Blackwell, Oklahoma, and close the transaction, and Coe assented. On their arrival at Blackwell, January 9, 1908, Coe gave Beutke a warranty deed for the Eureka property and received a deed from Beutke for the quarter section of land in Kansas, it being understood by Coe that it was an even trade. While they were talking about the trade, or on the way to Oklahoma, Barickman told Coe that he expected to receive $200 as his commission if the deal went through and that he would give Coe half. He gave him $50 in cash at Blackwell and on their return to Streator gave him the other $50 by a draft on a Streator bank, which Coe cashed on January 14, 1908.

Appellant is a business man at Streator, owning several farms in that vicinity and having an interest in one or two small banks. Barickman had worked for him on several occasions in buying cattle and transacting other business. A short time after Barickman and Coe returned to Streator, Coe, through Barickman, bought some cattle from Moon, the price being $458, and he paid Moon, by check, $58, asking him if that was right, and Moon said it was. Appellee testified that he understood that Moon owed Barickman $400, and that he (appellee) was to pay Barickman the balance of $400, which he did later. Barickman told Moon that he had agreed to give Coe this $400 as "boot money" in the trade of the Eureka property for the Kansas farm land. Moon consented to this, and therefore told Coe that the check for $58 was all right. Coe, Moon and Barickman all testified substantially alike on this question, and there is no proof in the record that either Moon or Coe knew of Barickman's deceit concerning the transaction. Moon knew, shortly after Barickman returned from Oklahoma, that the trade had been made with Coe through Beutke, but testified he supposed, until several months later, that the house and lot in Eureka were deeded to Barickman and not to Beutke. Barickman had the property deeded to Beutke, it seems, because he (Barickman) had some trouble with his wife and did not want her to claim a dower interest in the Eureka property. Several months after the trade was made Barickman had Beutke deed the Eureka property to Moon to secure Moon for the $800 he was to receive for the Kansas farm and for the $400 that Moon supposed he was allowing Coe as "boot money" on the trade. During this time Barickman had already received $100 or more in cash from Moon to re-pay a loan that he had made of Beutke while in Blackwell. This $100 was also supposed to be paid by the transfer of the Eureka property to Moon. While the property stood in Beutke's name Barickman apparently controlled it, collected the rent and had from $700

to $800 worth of repairs made on the property. After it was deeded to Moon the latter found that these repairs had not been paid for and paid them himself. After the repairs were made the house was rented for $15 a month. Barickman collected the rent for about a year and thereafter it seems appellant collected the rent.

Appellee testified that Barickman stated to him, prior to the trade for the Kansas land, that it was only six or eight miles from Garden City, and that wheat, sugar beets and oats could be raised on it; that the grass was good for grazing and that the land was worth from $4000 to $5000. In August, 1908, several months after the transaction, appellee visited the land and found that it was fifty miles from Garden City and about twenty-five miles from the nearest railroad station; that no crops had ever been grown on or around it, except an acre or two of poor corn on an adjoining farm, and that the quarter section was worth from $500 to $800. He never took possession of the land nor paid any taxes on it. Before the suit he executed a deed to the land and offered to re-convey it to Beutke on receipt of a deed for the Eureka property. Prior to the time the bill was filed in this case, in November, 1908, Beutke, unknown to appellee, conveyed the Eureka property to Moon. Later a supplemental bill was filed making Moon and his wife defendants. Barickman testified that he did not tell appellee that the land was within six or eight miles of Garden City. He stated, however, in his testimony, that he had told appellee they were asking $4000 for the quarter section. Witnesses were called on both sides as to the value of the Eureka property. They testified as to its value all the way from $1600 to $3000. The master found it was worth $2300 at the time of the trade.

Both appellee and appellant claimed they were deceived by Barickman. Appellant claims that he deeded the land to Beutke at the request of Barickman so as to be able to dispose of his Kansas farm for $800; that he paid $400

in the cattle transaction in order to consummate the trade, and that to secure himself for these sums, and also the $100, he took the deed to the Eureka property at a valuation of $1750, which was the full value of the house and lot. He also insists that even though appellee was a minor at the time the deed was given to the Eureka property, he was simply acting as agent for his mother and could act as agent even when a minor, and that, in any event, appellee ratified the trade after he became of age. Appellee contends that the whole transaction on the part of Barickman, Moon and Beutke was a scheme devised and carried out by Moon, with the assistance of Barickman and Beutke, to trade for the property in Eureka at an inadequate price; that Beutke was simply a figurehead and that Barickman was Moon's active agent in the various transactions.

The evidence shows, without contradiction, that the Eureka property was deeded by appellee's mother to him to do with as he saw fit and to make the trade on such terms and conditions as he wished. He was not acting as her agent but for himself in making the trade. The only evidence in the record tending to show that he ratified the trade after he became of age is in cashing the $50 draft in Streator on his return from the Oklahoma trip, on January 14, 1908; in obtaining an abstract of the Kansas farm in May, 1908; in permitting the improvements to be made on the Eureka property before he attempted to have the trade set aside, and in not beginning the suit until November, 1908. Ratification by an adult of a contract made by him when a minor is a question of intention. (*McCarty* v. *Carter,* 49 Ill. 53.) In order to constitute ratification of acts done in infancy, the act relied upon as ratification must be performed with full knowledge of its consequences and with an express intent of ratifying what is known to be voidable. (*Davidson* v. *Young,* 38 Ill. 145.) Where the same lack of knowledge exists at the time of the alleged ratification as existed at the time of the original contract

260 — 6

or deed, in such case the ratification is held to be a part of the original transaction and to be ineffectual. (*Sayles* v. *Christie,* 187 Ill. 420.) There is nothing to indicate that appellee had any knowledge as to the real value of the Kansas land until he visited it in August, 1908. He testified that he began to be suspicious of Barickman about the time he ordered the abstract, in May, 1908, and did not advise with him for some time before or after that with reference to what he would do in the matter. It appears that there was a court proceeding started in Kansas affecting the title to said quarter section, in which both appellee and appellant were made parties and which was settled previous to this litigation. Appellee did not defend that suit but appellant did. Barickman was called as a witness by appellant. While he was a cousin of appellee, it is possible to conclude from this record that he deceived both appellant and appellee with reference to this trade, but it is apparent from all the circumstances in proof that appellant knew that he was making the trade in such a way as to deceive the purchaser, and was willing to assent to such deception by following Barickman's suggestion to deed the farm to Beutke without any money being paid in advance and without himself communicating with Beutke. There is absolutely no evidence in the record that supports in any way appellant's contention that appellee knew that the $400 payment as a part of the cattle trade was understood by Moon to be a part of the "boot money" in the trade for the land or that he received any part of it. Both Moon and Barickman testified that the talk on that question was made out of appellee's presence. The master and the court found that appellee never legally ratified his deed to the Eureka property after he became of age. The evidence in the record. supports this finding.

The master found that appellee should pay to appellant $250, holding that to be the amount expended by appellant for improvements on the Eureka property, less the rents

that had been received from said property from January 9, 1908, to the date of the filing of the report, December 20, 1910. The decree ordered that appellee should pay appellant $250, less the net rents from the Eureka property from the date of the master's report to the time of settlement. Appellant contends that if the deed is to be set aside appellee should be decreed to deed back the Kansas land and should pay back the amount appellant paid for repairs on the Eureka property, ($750,) apparently without taking into account the rents that he has received, or, at least, without taking into account the rent that had been collected by Barickman the first year the trade was made. He also contends that appellee ought to re-pay the $100 that he received from Barickman as a part of the commission, as he contends he has never been able to collect from Barickman any part of the purchase price of the Kansas land or any part of the money advanced as heretofore stated. While it appears that appellee, before the commencement of the suit, tendered to Beutke a deed to the Kansas land, and counsel for appellee in their brief state that appellee is still willing to re-convey the land, the decree does not find that appellee must re-convey to appellant whatever interest he has in the Kansas land in addition to the payment of the money found to be due by the court. The decree should have directed such re-conveyance to Moon. It is stated in the briefs that the Kansas land may have been sold for taxes. Appellee should only be required to give to Moon a quit-claim deed of whatever interest he may have in the quarter section.

The purchaser from an infant whose deed has been avoided is entitled to be allowed for the improvements placed upon the property by setting off the same against rents and profits, but it has been held that the infant can not be required to compensate the purchaser for improvements exceeding the rental value. (22 Cyc. 561; *Sewell* v. *Sewell,* 92 Ky. 500; *Clark* v. *Tate,* 7 Mont. 171.) To give effect to an infant's disaffirmance of his contract it is

not necessary that the other party be placed *in statu quo,* for if the law in every case required restitution of the consideration as a condition precedent to the disaffirmance of a contract, it would often result in accomplishing indirectly what it expressly says shall not be done directly, and the purpose of permitting infants to avoid their contracts might often be thus defeated. (16 Am. & Eng. Ency. of Law,—2d ed.—293, and cases cited.) Under these rules of law appellant is in no position to question the accounting. No cross-errors having been assigned, it is not necessary for us to inquire into the question as to whether there was a proper accounting on behalf of appellee.

The decree of the trial court is reversed and the cause remanded, with directions to the circuit court to enter a decree requiring appellee to give appellant a quit-claim deed of whatever interest he may have in the quarter section of Kansas land. In all other respects the decree is affirmed. The costs in this court will be paid by appellant.

*Affirmed in part and reversed in part, with directions.*